**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SINCLAIR-ALLISON, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-12-360-M |
| ) | |
| FIFTH AVENUE PHYSICIAN ) | |
| SERVICES, LLC; ) | |
| FIFTH AVENUE AGENCY, INC.; ) | |
| PRIMORIS CREDENTIALING ) | |
| NETWORK; and ) | |
| PROFILE VERIFICATION SERVICES, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is defendants' Motion to Dismiss, filed June 4, 2012. On June 25, 2012, plaintiff filed its response, and on July 2, 2012, defendants filed their reply. On August 2, 2012, plaintiff filed a Supplemental Brief in Response to Defendants' Motion to Dismiss, and on August 9, 2012, defendants filed their response to plaintiff's supplemental brief.[1]

I.   Introduction

Plaintiff brings this action for patent infringement against defendants. Specifically, plaintiff alleges that defendants have infringed U.S. Patent Number 6,862,571 ("Patent '571") and U.S. Patent Number 7,469,214 ("Patent '214"). Broadly speaking, Patent '571 includes patented processes, and apparatuses, for compiling healthcare professional credentialing information and transferring said information to an application for medical malpractice insurance. Broadly speaking,

---

[1]Plaintiff submitted its supplemental brief to address the applicability of the Federal Circuit's decision in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, ___ F.3d ___, No. 2011-1301, 2012 WL 2708400 (Fed. Cir. July 9, 2012). On October 9, 2012, the Federal Circuit issued an order granting a petition for rehearing en banc in the *CLS Bank* case and vacating its July 9, 2012 opinion. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, No. 2011-1301, 2012 WL 4784336 (Fed. Cir. Oct. 9, 2012).

Patent '214 includes a patented method for ensuring current information for liability insurance underwriting, wherein associated credentialing information may be updated and analyzed to determine if a policy should be underwritten or renewed.

Defendants have moved this Court to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Specifically, defendants contend that the business method sought to be patented in Patent '571 and Patent '214 is an unpatentable abstract idea and, therefore, the patents are unenforceable and invalid as a matter of law.

II.   Discussion

Section 101 of the Patent Act provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The United States Supreme Court has set forth three specific exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) ("*Bilski II*"). Therefore, generally, "any invention within the broad statutory categories of § 101 that is made by man, not directed to a law of nature or physical phenomenon, and not so manifestly abstract as to preempt a fundamental concept or idea is patent eligible." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331 (Fed. Cir. 2012). Additionally, "for abstractness to invalidate a claim it must exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Id.* at 1333 (internal quotation and citation omitted).

Whether asserted patent claims are invalid for failure to claim statutory subject matter under § 101 is a question of law. *See In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009). However, "determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming." *Arrhythmia Research Tech. Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1056 (Fed. Cir. 1992). Therefore, because a patent is presumed to be valid pursuant to 35 U.S.C. § 282, a party must prove the factual elements of ineligibility by clear and convincing evidence. *See Island Intellectual Prop. LLC v. Deutsche Bank AG*, No. 09 Civ. 2675 (KBF), 2012 WL 386282, at *2 (S.D.N.Y. Feb. 6, 2012); *Voter Verified, Inc. v. Election Sys. & Software, Inc.*, 745 F. Supp. 2d 1237, 1251 (M.D. Fla. 2010) ("A patent is presumed valid, and [defendant] bears the burden to prove the factual elements of invalidity under 35 U.S.C. § 101 . . . by clear and convincing evidence.").

Further, there is no requirement that claims construction be completed before examining patentability. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 771 F. Supp. 2d 1054, 1059 (E.D. Mo. 2011) (addressing defendant's § 101 arguments before proceeding with claims construction); *Fuzzysharp Techs., Inc. v. 3D Labs Inc., Ltd.*, No. C07-5948-SBA, 2009 WL 4899215, at *2, n.1 (N.D. Cal. Dec. 11, 2009) (declining to complete claims construction before ruling on validity, but indicating that patent holder's construction would be utilized if necessary). Having carefully reviewed the parties' submissions, the Court finds no need to formally construe any of the claims prior to ruling on the issue of validity. Plaintiff's claims construction will be utilized if necessary.

Finally, in *Bilski II*, the Supreme Court held that the "machine-or-transformation test" is not the sole test for deciding whether an invention is a patent-eligible process but "is a useful and

important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski II*, 130 S. Ct. at 3227. The Supreme Court further held that its precedents on the unpatentability of abstract ideas provide useful tools in determining the validity of business process patents. *Id*. at 3229.[2]

The question before the Court in the instant action is whether the patents at issue claim protection for a patentable process or for an abstract idea. In making this determination, the Court will first consider whether the claims satisfy the machine-or-transformation test and then will apply *Bilski II* and examine whether what is claimed is an abstract idea under *Benson*, *Flook*, and *Diehr*.

    A.    <u>Machine-Or-Transformation Test</u>

Under the machine-or-transformation test, a claimed process is patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing. *See Bilski II*, 130 S. Ct. at 3224. Further, "the recited machine or transformation must not constitute mere 'insignificant postsolution activity.'" *In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008) (citing *Flook*, 437 U.S. at 590). Defendants assert that Patent '571 and Patent '241 fail to satisfy the machine-or-transformation test. Plaintiff, on the other hand, contends that Patent '571 and Patent '241 pass the machine-or-transformation test.

        1.    <u>Machine</u>

The Federal Circuit has found:

> to impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope. In

---

[2]The Supreme Court specifically references the following prior decisions: *Gottschalk v. Benson*, 409 U.S. 63 (1972); *Parker v. Flook*, 437 U.S. 584 (1978); and *Diamond v. Diehr*, 450 U.S. 175 (1981).

>   other words, the machine must play a significant part in permitting the claimed method to be performed. . . . the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium. Thus, merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test.

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).  The Federal Circuit has further found:

>   In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations.

*Dealertrack*, 674 F.3d at 1333 (internal quotations and citation omitted).  Further, the salient question is not whether the claims are tied to *a* machine but whether the claims are tied to *a particular* machine.  *See Fuzzysharp*, 2009 WL 4899215, at *4.

   Plaintiff asserts that the claimed processes include limitations that meaningfully limit the claim scope to only those credentialing and medical malpractice collaborations that utilize electronic forwarding and transferring (Patent '571) and a computer network (Patent '214).  Having carefully reviewed the patent claims, the Court finds that Patent '571 and Patent '214 are not tied to a particular machine.  Specifically, construing the terms "electronic forwarding and transferring" and "computer network" in the light most favorable to plaintiff, the Court finds that the patent claims are not tied to a particular machine.  Electronic forwarding and transferring can be accomplished by a number of machines, including a computer or a fax machine; however, the patent claims do not provide any specifics as to which machine is to be used and/or how that machine is to be

programmed to perform the steps claimed in the patents. Additionally, the term "computer network" is not tied to any *particular* computer network; the claim in Patent '214 simply references "a computer network." The computer network referenced is nothing more than a general computer network that has been programmed in some unspecified manner. The patent claims contain no indication that the computers, or other devices required to implement the methods, are specifically programmed, and the claims make no mention of any specific hardware, let alone software or specifically programmed hardware.

Further, the Court finds the terms "electronic forwarding and transferring" and "computer network" do not impose any meaningful limit on the scope of the claims nor do they play a significant part in permitting the claimed method to be performed but rather simply function as an obvious mechanism for permitting the process to be achieved more quickly and efficiently. The patent claims in the case at bar are entirely unlike patent claims in other cases where, as a practical matter, the use of a computer is required to perform the claimed method. The patents clearly recognize this as it is stated in the preferred embodiment section of Patent '571 and Patent '214 that "this invention is not limited to the preferred embodiment, and can be accomplished without the use of computers or electronic means. The methods of transferring information manually, or by way of a hybrid combination of manual and electronic transference, are both encompassed by this invention." Patent '571, Col. 5, ln. 18-23; Patent '214, Col. 5, ln. 43-48.

    2.  Transformation

"A claimed process is patent-eligible if it transforms an article into a different state or thing. This transformation must be central to the purpose of the claimed process." *Bilski*, 545 F.3d at 962. Further,

> So long as the claimed process is limited to a practical application of a fundamental principle to transform specific data, and the claim is limited to a visual depiction that represents specific physical objects or substances, there is no danger that the scope of the claim would wholly pre-empt all uses of the principle.

*Id.* at 963. "The mere manipulation or reorganization of data, however, does not satisfy the transformation prong." *Cybersource*, 654 F.3d at 1375. "Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski*, 545 F.3d at 963.

Plaintiff contends that because the central purpose of the patents is to transform a medical healthcare professional's credentialing application into an application for medical malpractice insurance, the transformation test is met. Having carefully reviewed the patent claims, the Court finds that the transformation test is not met. Specifically, the Court finds the processes claimed in Patent '571 and Patent '214 do not transform any article to a different state or thing. The Court finds that the patent claims do not transform the raw data in the credentialing application into anything other than more data in the application for medical malpractice insurance and are not representations of any physically existing objects. Data from the credentialing application is simply transferred, not transformed, to an application for medical malpractice insurance.

B. <u>Abstract Idea</u>

The Court now considers whether the patent claims are otherwise patentable or are unpatentable abstract ideas. In making this determination, the Court has considered the Supreme Court's precedents regarding abstract ideas as set forth in *Bilski II*. Having carefully reviewed Patent '571 and Patent '214, the Court finds that the claims are invalid as being directed to an

abstract idea preemptive of a fundamental concept or idea that would foreclose innovation in this area. The patent claims simply explain the basic concept of compiling data and recycling it for different purposes. The Court further finds that the steps that constitute the processes do not impose meaningful limits on the claims' scope. Although directed to a particular use (transferring healthcare professional credentialing information to a medical malpractice insurance application), the patents nonetheless cover a broad idea. The notion of compiling data and recycling it for different purposes generally and compiling data and recycling it for the purpose of a medical malpractice insurance application, like the relationship between hedging and hedging in the energy market addressed in *Bilski II*, is of no consequence without more.

III.     Conclusion

For the reasons set forth above, the Court finds that the claims in Patent '571 and Patent '214 are patent ineligible abstract ideas under § 101 and that the patents, therefore, are unenforceable and invalid as a matter of law. The Court, accordingly, GRANTS defendants' Motion to Dismiss [docket no. 18].

**IT IS SO ORDERED this 19th day of December, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE